### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CV-60723-RUIZ/STRAUSS

**COREY J. ZINMAN,**

      Plaintiff,

v.

**NOVA SOUTHEASTERN UNIVERSITY, INC.,** *et al.***,**

      Defendants.

_____/

### REPORT AND RECOMMENDATION[1]

THIS MATTER came before the Court upon the following motions:

(1) Plaintiff's Motion for Sanctions Regarding Submission of False or Misleading Statements by Defendant's Attorneys Richard Beauchamp and Benjamin Bean and Incorporated Memorandum ("Motion for Sanctions") [DE 42];

(2) Broward County's, Bertha Henry's, and Miami-Dade County's Joint Motion to Dismiss Plaintiff's Second Amended Complaint ("First Motion to Dismiss") [DE 43];

(3) Defendants, Nova Southeastern University, Inc., and South Florida Stadium LLC's, Motion to Dismiss Second Amended Complaint ("Second Motion to Dismiss") [DE 44]; and

(4) Motion to Strike (1) Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Sanctions; and (2) Plaintiff/Petitioner's Memorandum of Law in Support of Plaintiff/Petitioner's Motion for Sanctions ("Motion to Strike") [DE 53].

I have reviewed the foregoing motions, all related filings, and all other pertinent portions

of the record.  For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion

for Sanctions [DE 42] be **DENIED**, that the First Motion to Dismiss [DE 43] be **GRANTED**, that

---

[1] This case has been referred to me for rulings on all pre-trial, non-dispositive matters and for the issuance of a Report and Recommendation on any dispositive matters [DE 40].

the Second Motion to Dismiss [DE 44] be **GRANTED**, and that the Motion to Strike [DE 53] be **DENIED as moot**.

<u>**MOTIONS TO DISMISS**</u>

I.     <u>**BACKGROUND**</u>

    A. **ALLEGATIONS & CLAIMS**

Plaintiff was a law student at Nova Southeastern University, Inc. ("Nova") in Broward County, Florida when he commenced this action against Nova and South Florida Stadium, LLC ("Stadium") on April 2, 2021.  Second Amended Complaint ("SAC") [DE 38] ¶ 11.  In addition to bringing claims against Nova and Stadium, the SAC asserts claims against Broward County ("Broward"), Broward Administrator Bertha Henry ("Henry"), Miami-Dade County ("Dade"), Palm Beach County Public Defender Carey Haughwout, and Palm Beach County ("Palm Beach") (Broward, Dade, and Palm Beach may collectively be referred to as the "Counties").

The claims in this case relate to mask mandates/policies adopted by the different Defendants.  Each of the three county Defendants implemented emergency orders ("Emergency Orders") containing mask (and other) requirements.  *See infra* Part I.B.  Additionally, based upon CDC recommendations and local ordinances adopted due to the COVID-19 pandemic, Nova required individuals to wear facial coverings while on campus and while using Nova's facilities and grounds.  SAC ¶ 21.  Similarly, Nova informed students that they would be required to wear face masks at graduation, which was scheduled to occur on May 16, 2021 at the Hard Rock Stadium (located in Dade), which Stadium operates.  *Id.* ¶¶ 13, 32; [DE 31] at 2.

Plaintiff, who is Jewish, contends that the mask mandates require actions that run contrary to his religious beliefs.  Specifically, he alleges that Judaism prohibits idolatry, SAC ¶ 46, and that complying with mask mandates would be tantamount to worshiping false idols – i.e., the "so-called

2

'experts' who claim to be able to save lives if people simply obey their commands without question." *Id.* ¶ 57. As a result, Plaintiff sought to be excused from Nova's mask policy. Initially, he requested a "religious accommodation" from Nova to permit him to participate in a Criminal Justice Field Placement Clinic ("Clinic") without being obligated to wear a mask. *Id.* ¶ 22. That request was denied. *Id.* ¶ 23. The Palm Beach Public Defender's Officer likewise denied Plaintiff's request for a mask exemption (due to Palm Beach's mask mandate by which the office was bound), and it informed Plaintiff that it could not offer remote participation in the Clinic. *Id.* ¶¶ 28, 30. Therefore, Plaintiff withdrew from the Clinic. *Id.* ¶ 31. Thereafter, Plaintiff also separately sought to be excused from Nova's mask policy altogether, requesting that Nova "accommodate individuals for whom compliance with mandatory mask wearing policies conflicts with their sincerely held religious beliefs and/or practices." *Id.* ¶ 33. This request was denied as well. *Id.* ¶¶ 34-36.

Based upon the foregoing, Plaintiff alleges that Nova and Stadium discriminated against him. He also alleges that Defendants' mask mandates/policies violated his constitutional rights. *See id.* ¶ 83. As such, Plaintiff asserts the following claims in the SAC:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Intentional Discrimination (Title II of the Civil Rights Act of 1964; "CRA") | Nova Stadium |
| II | Intentional Discrimination (Title VI of the CRA) | Nova |
| III | 42 U.S.C. § 1983 | Nova Broward County Bertha Henry |
| IV | 42 U.S.C. § 1983 | Stadium Miami-Dade County |
| V | 42 U.S.C. § 1983 | Carey Haughwout Palm Beach County |
| VI | Violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") | Broward County Miami-Dade County Palm Beach County |

Pursuant to the First Motion to Dismiss, Broward and Dade seek dismissal of the counts against them – Counts III, IV, and VI. Pursuant to the Second Motion to Dismiss, Nova and Stadium seek dismissal of the counts against them. They seek dismissal of Counts I and II and also request that they be dismissed as defendants from Counts III and IV. Palm Beach and Haughwout have not yet been served. Therefore, they have not yet appeared in this matter and are not parties to the pending motions to dismiss (which do not address Count V). Nevertheless, the analysis of the claims against Broward equally applies to the claims against Palm Beach (the Dade analysis does as well except as to the issue of standing).

### B. COUNTIES' EMERGENCY ORDERS

The Emergency Orders Plaintiff complains about in the SAC are Broward Emergency Order 20-21 ("Broward Order"), Dade Emergency Order 20-20 ("Dade Order"), and Palm Beach Emergency Order 2020-012 ("Palm Beach Order"). *See, e.g.*, SAC ¶¶ 121, 130, 135. The SAC generally references these three Emergency Orders, "as amended," but it does not set forth any of the specific provisions of the Emergency Orders or specifically address or refer to any of the amendments to the Emergency Orders.[2] Nonetheless, because the Emergency Orders are public records, and because they are referred to in and central to the SAC, I take judicial notice of them and the other emergency orders and amendments discussed herein.[3] *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("[A] district court may consider an extrinsic

---

[2] Only the Dade Order actually has "amendments" to it. Broward and Palm Beach did not enact "amendments" to their emergency orders but instead issued further emergency orders.

[3] The Broward Order, and all of Broward's other COVID-19 emergency orders, can be found at https://www.broward.org/CoronaVirus/Pages/EmergencyOrders.aspx#County%20Emergency%20Orders%20-%20Suspended. The Dade Order, and all of Dade's other COVID-19 emergency orders, can be found at https://www.miamidade.gov/global/initiatives/coronavirus/emergency-orders.page. The Palm Beach Order, and all of Palm Beach's other COVID-19 emergency orders, can be found at https://discover.pbcgov.org/coronavirus/Pages/Orders.aspx.

document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." (citation omitted)).

As an initial matter, all county and municipality emergency orders imposing restrictions or mandates on businesses or individuals due to COVID-19 were suspended by executive order of Florida's Governor, Ron DeSantis, on May 3, 2021.  *See infra* Part III.C.1.  Thus, the county mask mandates at issue in the SAC have not been in effect since at least that date.  However, I will briefly provide some background regarding the suspended Emergency Orders.

The Broward Order initially became effective on July 10, 2020.  Section 3 of the Broward Order required all persons in Broward to wear a facial covering with certain exceptions (listed in Section 3.B of the order).  *See* Broward Order at 5-8.  On December 11, 2020, Broward enacted Emergency Order 20-29, which included a Comprehensive Emergency Order ("Broward CEO") that superseded Broward's prior emergency orders, including the Broward Order.  The facial covering requirements in Section 3 of the Broward CEO are essentially a more detailed and refined version of facial covering requirements set forth in the Broward Order.  The Broward CEO has been updated from time to time, and the most recent version can be found at the first link identified in footnote 3 above.

The Dade Order initially became effective on April 9, 2020.  It initially contained very limited facial covering requirements.  *See* Dade Order ¶ 1.  However, it was amended on July 2, 2020 to require all persons in Dade to wear a mask or facial covering when in public with certain exceptions.  *See* Amendment No. 1 to Dade Order ¶ 1.  It was also amended a second time, with an effective date of October 6, 2020.  *See* Amendment No. 2 to Dade Order.  The mask requirement generally remained the same, but the list of exceptions was expanded.  On April 5, 2021, the Dade Order was cancelled (effective April 6, 2021) by Dade Emergency Order 33-20.  The new

emergency order, however, contained a substantially similar facial covering requirement. Nevertheless, not only was Emergency Order 33-20 suspended by Governor DeSantis, but on May 6, 2021, it was formally cancelled by Dade as well.

Finally, the Palm Beach Order became effective on June 25, 2020. Like the other counties' orders, the Palm Beach Order contained facial covering requirements and exemptions thereto. *See* Palm Beach Order § 4. The facial covering component of the Palm Beach Order was extended on various occasions, but it largely remained the same until suspended by Governor DeSantis's Executive Order.

## II.   **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts

must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## III.   **ANALYSIS**

### A.  COUNT I – TITLE II OF THE CRA

Under Title II, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation[4] . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). In order to state a claim under Title II, a plaintiff must plausibly allege that he:

> (1) is a member of a protected class; (2) attempted to contract for services and afford [himself] the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyments of a public accommodation; and (4) such services were available to similarly situated persons outside [his] protected class who received full benefits or who were treated better.

*Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002), *aff'd*, 97 F. App'x 904 (11th Cir. 2004) (citation omitted). *See also Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008); *Zinman v. L.A. Fitness Int'l LLC*, No. 21-CV-20315, 2021 WL 2530271,

---

[4] 42 U.S.C. § 2000a(b) sets forth the types of establishments that qualify as places of public accommodation.

at *8 (S.D. Fla. June 21, 2021); *Zinman v. Nova Se. Univ.*, No. 21-CIV-60723-RAR, 2021 WL

1945831, at *3 (S.D. Fla. May 14, 2021).[5]

> In seeking dismissal, Stadium and Nova raise the following arguments:
>
> (1) Plaintiff does not allege that [Stadium] discriminated against him in any way;
> (2) private businesses such as the Commencement Defendants are authorized to
> develop and implement facially neutral safety protocols to be followed by their
> students, staff and patrons; (3) Title II does not require private businesses such as
> the Commencement Defendants to accommodate an individual such as the Plaintiff
> where adherence to a facially neutral policy would allegedly violate his religious
> beliefs or expression; (4) NSU is not a public accommodation under Title II and
> Plaintiff has not alleged he was denied access to any area on NSU's campus or
> property that could arguably be considered a place of public accommodation; and
> (5) Plaintiff has failed to exhaust his administrative remedies and, therefore, this
> Court lacks jurisdiction over Plaintiff's claim under Title II.

Second Motion to Dismiss at 6.

I find that the final issue Stadium and Nova raise warrants dismissal – for failure to state a

claim, not on jurisdictional grounds.  With respect to this issue, Stadium and Nova argue that Count

I should be dismissed because Plaintiff failed to comply with Title II's notice provision.  That

provision, 42 U.S.C. § 2000a-3(c), provides as follows:

> In the case of an alleged act or practice prohibited by this subchapter which occurs
> in a State, or political subdivision of a State, which has a State or local law
> prohibiting such act or practice and establishing or authorizing a State or local
> authority to grant or seek relief from such practice or to institute criminal
> proceedings with respect thereto upon receiving notice thereof, *no civil action may
> be brought under subsection (a) before the expiration of thirty days after written
> notice of such alleged act or practice has been given to the appropriate State or
> local authority by registered mail or in person*, provided that the court may stay

---

[5] *See also Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1295
(M.D. Ala. 2019), *aff'd*, 6 F. 4th 1247 (11th Cir. 2021).  ("To prevail, Coral Ridge must overcome
three successive hurdles. First, it must plausibly allege that the Amazon defendants operate as a
'place of public accommodation' within the meaning of Title II. Second, it must plausibly allege
that its exclusion . . . constituted the denial of 'services,' 'privileges,' or 'advantages,' etc., of the
Amazon defendants as places of public accommodation. Third, it must plausibly allege that the
denial of such services, privileges, advantages, etc. amounted to 'discrimination . . . on the ground
of . . . religion.'" (internal citations omitted)).

> proceedings in such civil action pending the termination of State or local
> enforcement proceedings.

42 U.S.C. § 2000a-3(c) (emphasis added).  Stadium and Nova contend that Plaintiff's failure to

comply with the foregoing notice provision deprives the Court of subject matter jurisdiction.

Plaintiff, however, implies that the notice provision is not jurisdictional.  Regardless, he argues

that he was not required to comply with the notice provision because he urgently sought injunctive

relief.  Finally, Plaintiff argues that he complied with the notice requirement even though he was

not required to do so.

     As indicated above, I agree with Plaintiff that the Court has subject matter jurisdiction over

Count I (though not for the reason espoused by Plaintiff).  However, I find that Plaintiff was

required to comply with the notice provision and that he failed to do so.  Therefore, he fails to state

a claim.

     As to the potential jurisdictional issue,[6] Plaintiff's implication that the notice provision is

non-jurisdictional is premised upon the language of 42 U.S.C. § 2000a-6(a), which provides that

"[t]he district courts of the United States shall have jurisdiction of proceedings instituted pursuant

to this subchapter and shall exercise the same without regard to whether the aggrieved party shall

have exhausted any administrative or other remedies that may be provided by law."  But at least

two circuit courts of appeals that have considered § 2000a-3 (the notice provision) to be

jurisdictional have found that § 2000a-6 does not conflict with § 2000a-3 because "§ 2000a-6

simply provides that one who, for example, has given notice to the appropriate state agency need

not thereafter *exhaust* such remedy before the district court acquires jurisdiction."  *See Stearnes v.*

---

[6] The Court must first address the jurisdictional issue because "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

*Baur's Opera House, Inc.*, 3 F.3d 1142, 1144-45 (7th Cir. 1993) (quoting *Harris v. Ericson*, 457 F.2d 765, 767 (10th Cir. 1972)) (emphasis added).[7]  In other words, Title II's notice provision does not require one to "exhaust" administrative remedies before bringing suit, so even if it were jurisdictional, it is unaffected by § 2000a-6.  *See Stearnes*, 3 F.3d at 1144-45; *Harris*, 457 F.2d at 766-67; 42 U.S.C. § 2000a-3(c).

Nevertheless, I find that Title II's notice provision, like Title VII's charge-filing requirement,[8] "is not of jurisdictional cast." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019).  The Supreme Court has "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'"  *Id.* at 1849. Ultimately, "[i]f the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Id.* at 1850 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)) (alterations adopted).

With respect to Title II's notice provision, the Legislature did not *clearly* state that it "counts as jurisdictional."  Instead, like Title VII's charge-filing provisions, it speaks to "a party's procedural obligations."  *Id.* at 1851 (citation omitted).  Therefore, like Title VII's charge-filing requirement, Title II's notice requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Id.*  In a similar vein,

---

[7] Like the Seventh Circuit and Tenth Circuit, the Eighth Circuit has also found Title II's notice provision to be jurisdictional.  *See Bilello v. Kum & Go, LLC*, 374 F.3d 656, 659 (8th Cir. 2004); *Zean v. Choice Hotels Int'l, Inc.*, 801 F. App'x 458, 459 (8th Cir. 2020).

[8] *See* 42 U.S.C. § 2000e-5.

applying *Arbaugh* and certain other Supreme Court precedent discussed in *Davis*, the D.C. Circuit Court of Appeals has held that Title II's notice provision "does not constitute a jurisdictional prerequisite." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 153 (D.C. Cir. 2015). Additionally, the Eleventh Circuit, albeit in dicta in an unpublished case, has explained that "[t]o bring a viable claim under Title II, a plaintiff must first exhaust state or local administrative remedies, if such remedies are available." *Strober v. Payless Rental Car*, 701 F. App'x 911, 913 n.3 (11th Cir. 2017) (citing 42 U.S.C. § 2000a-3(c)). In other words, the court recognized, at least implicitly, that a lack of compliance with § 2000a-3(c) affects one's ability to bring a Title II claim – not whether the Court has jurisdiction over that claim.

Having determined that Title II's notice provision does not implicate subject matter jurisdiction, I will now consider whether Plaintiff was required to comply with the provision. This turns on the availability of state or local administrative remedies. Because such remedies were available, Plaintiff's compliance was required. Specifically, like Title II, the Florida Civil Rights Act makes it impermissible to deny an individual access to a place of public accommodation based on religion.[9] "[A]nd the Florida Commission on Human Relations ['FCHR'] is charged with investigating complaints made pursuant to the Florida Civil Rights Act." *Strober*, 701 F. App'x at 913 n.3 (citing §§ 760.03, 760.06, 760.08, 760.11, Fla. Stat.). "Thus, pursuant to Title II, Plaintiff was required, at least thirty days prior to commencing this civil action, to give written

---

[9] *Compare* 42 U.S.C. § 2000a(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."), *with* § 760.08, Fla. Stat. ("All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion."). *See also Strober*, 701 F. App'x at 913 n.3.

11

notice to the [FCHR] by registered mail or in person, of [Stadium's and Nova's] alleged discriminatory conduct." *L.A. Fitness*, 2021 WL 2530271, at \*5.

Plaintiff, however, contends that no such notice was required because he sought injunctive relief and acted with urgency in doing so.  In so arguing, Plaintiff relies on *Robinson v. Power Pizza, Inc.*, 993 F. Supp. 1458 (M.D. Fla. 1998), where the court held that Title II's notice provision "does not require Plaintiffs to provide notice to a State or local authority prior to filing a complaint in federal district court in a situation where Plaintiffs seek preliminary relief and the State or local authority provides no mechanism for obtaining such relief." *Id.* at 1461.  Other decisions in this district have distinguished *Robinson* on the basis that the holding in *Robinson* is limited to situations "based on unique concerns of urgency." *L.A. Fitness*, 2021 WL 2530271, at \*5; *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1360 (S.D. Fla. 2001).

Even assuming *Robinson*'s holding is correct,[10] Plaintiff has failed to demonstrate any "unique concerns of urgency."  As this Court previously noted in denying Plaintiff's request for injunctive relief, "Nova notified students as early as January 2021 that masks would be required at the commencement ceremony." *Nova Se. Univ.*, 2021 WL 1945831, at \*3. *See also* SAC ¶ 32.  Yet, Plaintiff did not file this case and his motion for a preliminary injunction until April 2021.  Thus, even if this Court were to agree with the holding in *Robinson*, Plaintiff evidently failed to

---

[10] *Robinson*'s holding seems to be at odds with the text of § 2000a-3(c).  Even the court in *Robinson* recognized that "Congress *clearly contemplated* that actions seeking preliminary relief would be brought under section 2000a-3(a) *and that the thirty day notice requirement would apply to such actions*." 993 F. Supp. at 1460 (emphasis added).  While the court proceeded to state that "the statute is silent as to whether the agency must be one that can provide the Plaintiff with the particular relief sought," *id.*, such silence does not justify writing words into the statute that Congress did not include.  Moreover, the statute does not merely refer to a state or local law establishing or authorizing a state or local authority to grant relief from a discriminatory practice, it refers to a state or local law "establishing or authorizing a State or local authority to grant *or seek* relief from such practice."  § 2000a-3(c) (emphasis added).

12

act with any sense of urgency as he would like the Court to find.  As such, Plaintiff was required to comply with Title II's notice provision.

Nevertheless, Plaintiff failed to provide the requisite notice before commencing this action. He does allege that he "complied with Title II's notice requirement by filing an administrative complaint with the [FCHR] on December 16, 2020."  SAC ¶ 108.  However, the SAC provides no factual allegations regarding this alleged administrative complaint, and Plaintiff acknowledges in his response that he filed his administrative complaint against L.A. Fitness, [DE 59] at 18, an entity that is completely unrelated to the parties to this case.  While Plaintiff contends he was required to do nothing more than alert the FCHR of an alleged discriminatory act or practice, he provides no authority to support this contention or to otherwise show that his complaint to the FCHR was not required to identify the entity(ies) that engaged in the discriminatory act or practice.  After all, it seems unlikely that the FCHR could grant or seek relief against an entity of which it is unaware. Thus, Plaintiff has not complied with Title II's notice requirement.  At a minimum, he has failed to plausibly allege compliance.  Therefore, Count I should be dismissed.[11]

---

[11] Although Plaintiff's noncompliance with the notice requirement warrants dismissal on its own (making it unnecessary to reach all of the arguments for dismissal of Count I), at least certain of Stadium's and Nova's other arguments likely also independently warrant dismissal.  First, Stadium correctly contends that the factual allegations are woefully inadequate to plausibly allege any discrimination by Stadium.  Second, as this Court previously noted in denying Plaintiff's motion for injunctive relief:

Plaintiff does not allege that he is being denied entry to Nova or South Florida Stadium's property because of his religion. Rather, he alleges that Nova and South Florida Stadium have denied him an *accommodation* of his purported religious beliefs in violation of Title II. *See* Am. Compl. ¶ 66 ("Defendants' failure to accommodate individuals for whom compliance with mask mandates would violate their sincerely held religious beliefs is an unlawful discriminatory practice in violation of 42 U.S.C. § 2000(a)."). However, Plaintiff has not pointed to any authority indicating that Title II requires public facilities to *accommodate* religious beliefs and practices. Indeed, at least one court has found that it does not. *See Boyle v. Jerome Country Club*, 883 F. Supp. 1422, 1432 (D. Idaho 1995) ("Those public

### B.  COUNT II – TITLE VI OF THE CRA

Plaintiff's Title VI claim fails for the reasons discussed in this Court's earlier order denying Plaintiff's motion for injunctive relief.  *See Nova Se. Univ.*, 2021 WL 1945831, at *3-4.  Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  As this Court made clear, though, "Title VI does not provide for protection against discrimination on the basis of religion—only race, color, or national origin."  *Nova Se. Univ.*, 2021 WL 1945831, at *3 (collecting cases).

Nova correctly argues that the SAC does not contain any factual allegations to show that Nova's mask mandate was implemented to intentionally discriminate against any race, color, or national origin, nor that it disproportionately impacts any race, color, or national origin.  [DE 44] at 17.  Plaintiff responds to this argument by pointing out that the SAC states this "is an action for intentional discrimination based on race and religion."  [DE 59] at 19.  However, this allegation is not a factual allegation – it is conclusory.  Plaintiff also notes that he has alleged that he is Jewish, which applies to his religion, race, and national origin.  *Id.* at 19-20.  Even if the Court were to

---

facilities now covered by Title II are prohibited from discriminating against patrons on the basis of religion. To go beyond the intended language of Title II, and require public facilities to affirmatively accommodate patrons' religious beliefs . . . is not appropriate nor allowed under the applicable legislation.").

*Nova Se. Univ.*, 2021 WL 1945831, at *2.  *See also L.A. Fitness*, 2021 WL 2530271, at *6 n.5 ("[T]he Court must highlight that it is questionable whether Title II requires Defendant to *accommodate* Plaintiff's religious beliefs. Indeed, the crux of Plaintiff's claim is that he was treated unlawfully because Defendant refused to accommodate his religious beliefs by exempting him from the facial covering policy. However, at least one court has held that Title II does not extend to claims against public facilities for failure to accommodate." (internal citations omitted)). The same allegation from paragraph 66 of the Amended Complaint in this case (which is referenced in the order denying injunctive relief) is included in paragraph 106 of the SAC.

assume that one's race or national origin can be "Jewish" for purposes of a Title VI claim, Plaintiff fails to include factual allegations to show that Nova's mask mandate was discriminatory from a racial or national origin perspective.  That is because Plaintiff implies that the issue with the mask mandate is that compliance with it is tantamount to worshiping false idols, and that it is impermissible for Jewish people to worship idols.  *See* SAC ¶¶ 44-49, 57; *Nova Se. Univ.*, 2021 WL 1945831, at *1-4.  However, this issue pertains to a religious belief, not a racial characteristic. If the Court were to accept Plaintiff's argument, then one who discriminates against a Jewish person would automatically be liable for discrimination based on race, religion, and national origin, without any regard to what the nature of the discriminatory act was.  Such a broad and overgeneralized position, however, is untenable.  Accordingly, for the foregoing reasons, and for the reasons discussed in the Court's order denying injunctive relief, Count II should be dismissed.

### C.  COUNTS III & IV – 42 U.S.C. § 1983

Plaintiff fails to state a claim under § 1983 as he fails to plausibly allege a violation of any of his constitutional rights.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  Here, Plaintiff alleges various constitutional violations stemming from the mask mandates/policies at issue, including several First Amendment violations in addition to substantive due process violations.  Prior to addressing the merits of the alleged constitutional violations, section 1 below first addresses the threshold issues of mootness and standing.  As discussed therein, Plaintiff's requests for injunctive and declaratory relief are moot, and Plaintiff lacks standing to pursue his § 1983 damages claim against Dade and Stadium (Count IV).  Section 2 below addresses the merits of the alleged constitutional violations,

determining that Plaintiff has failed to, and cannot, plausibly allege any constitutional violations. Finally, section 3 below addresses Henry's claim that she is entitled to qualified immunity, finding that even if Plaintiff could plausibly allege any constitutional violations, Henry would still be entitled to qualified immunity.

Before proceeding to sections 1-3 below, I find it important to note that the SAC is a flawed pleading to say the least. It is light on relevant factual allegations and heavy on rhetoric and hyperbole, especially when it comes to the § 1983 claims. It very likely qualifies as a shotgun pleading because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015)). Further, it contains 52 footnotes and numerous legal citations. Complaints should rarely contain footnotes (certainly not 52 of them), and they should rarely (if ever) contain citations to case law. With respect to the § 1983 counts themselves, the allegations are about as conclusory as they come and fail to set forth the specific facts constituting the alleged constitutional violations – merely incorporating the majority of the general allegations in which the constitutional violations are alleged (albeit poorly). Notwithstanding these deficiencies, I am recommending dismissal on the merits (aside from the aspects that should be dismissed on mootness or standing grounds) for the reasons discussed in this Report.

Separately, I also note that while Palm Beach has not appeared or moved for dismissal (because it has not been served), the analysis applicable to the claims against Broward and Henry equally applies to the claims against Palm Beach and Haughwout. Therefore, the claims against Palm Beach and Haughwout should similarly be dismissed on the merits (except that the declaratory and injunctive relief claims should be dismissed based upon mootness).

Finally, I note that the analysis of the § 1983 claims does not address the issues that Nova and Stadium raise as to those counts. Nova and Stadium argue that they should be dismissed from the § 1983 claims because they are private entities, not state actors. However, they do not argue, like the Counties, that Plaintiff fails to plausibly allege any constitutional violations. Nonetheless, because the Counties correctly posit that the SAC fails to plausibly allege any such violations, it is not necessary to reach the state actor argument raised by Nova and Stadium. In other words, because the mask mandates did not violate Plaintiff's constitutional rights, Stadium and Nova cannot be liable even if they are state actors.

### 1. Mootness & Standing

Count IV of the SAC should be dismissed because Plaintiff's requests for declaratory and injunctive relief are moot and because Plaintiff does not have standing to pursue damages related to Count IV. Plaintiff's requests for injunctive and declaratory relief in Count III (and Count V) are likewise moot. However, Plaintiff has standing to pursue damages related to the claims alleged in Count III (and Count V).

"Federal courts are courts of limited jurisdiction." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The most notable—and most fundamental—limits on the federal 'judicial Power' are specified in Article III of the Constitution, which grants federal courts jurisdiction only over enumerated categories of 'Cases' and 'Controversies.'" *Id.* (citing U.S. Const. art. III, § 2). "This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Id.* (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011)).

Standing has been characterized as the "most important" or "most central" of Article III's jurisdictional prerequisites. *Id.* at 1337. One reason "is that whereas ripeness and mootness are fundamentally temporal—ripeness asks whether it's too soon, mootness whether it's too late—standing doesn't arise and evanesce; rather, it 'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "Standing asks, in short, whether a particular plaintiff even has the requisite stake in the litigation to invoke the federal 'judicial Power' in the first place." *Id.* (citing U.S. Const. art. III, § 2). "So, to compare [mootness and standing], the plaintiff whose suit goes moot once had a 'Case' but lost it due to the march of time or intervening events, whereas the plaintiff who lacks standing never had a 'Case' to begin with." *Id.* Importantly, a plaintiff is required to establish standing for each type of relief sought. *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga.*, 940 F.3d 1254, 1262 (11th Cir. 2019) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). For instance, he may have standing to pursue declaratory relief or damages even though he lacks standing to pursue the other. *See id.*

Here, Dade argues that Plaintiff's § 1983 claim against it is moot because its mask mandate was rescinded prior to Nova's graduation ceremonies at Stadium's venue. Plaintiff does not challenge Dade's mootness argument in responding to the First Motion to Dismiss. Broward did not raise any mootness argument in the First Motion to Dismiss. Nevertheless, it appears to claim in the Counties' reply that Plaintiff's challenge to its mask mandate is also moot because the mandate is no longer in place. *See* [DE 64] at 2. While an argument may not be raised for the first time in a reply, *see infra* note 21, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco*

*Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citations omitted).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiff's requests for injunctive and declaratory relief, in both Counts III and IV (and V) are moot due to a recent executive order signed by the governor of Florida.  On May 3, 2021, Governor DeSantis, signed Executive Order 2021-102, which "eliminate[d] and supersede[d] any existing emergency order or ordinance issued by a county or municipality that imposes restrictions or mandates upon businesses or individuals due to the COVID-19 emergency." *L.A. Fitness*, 2021 WL 2530271, at *7-8 (quoting Fla. Exec. Order No. 2021-102).  The Executive Order provides that:

> For the remaining duration of the state of emergency initiated by Executive Order 20-52, no county or municipality may renew or enact an emergency order or ordinance, using a local state of emergency or using emergency enactment procedures under Chapters 125, 252, or 166, Florida Statutes, that imposes restrictions or mandates upon businesses or individuals due to the COVID-19 emergency.

*Id.* at *8 (quoting Fla. Exec. Order No. 2021-102).  As Judge Bloom recently noted in *L.A. Fitness*, a separate case brought by Plaintiff, Plaintiff's effort to challenge the constitutionality of Palm Beach's mask mandate became moot as a result of the aforementioned Executive Order.  *See id.* at *7-8.  For the same reason, Plaintiff's challenges to the mask mandates imposed by Dade and Broward are moot in light of the Executive Order.  Therefore, Plaintiff's requests for declaratory and injunctive relief in Counts III and IV (and V) are not premised upon a live case or controversy and should be dismissed.

However, that does not end the inquiry because Plaintiff's § 1983 claims are not limited to requests for injunctive and declaratory relief.  Plaintiff also seeks damages stemming from the alleged constitutional violations.  Simply because the mask mandates are no longer in place does not mean any claims for damages that became ripe prior to Governor DeSantis's Executive Order

were mooted out by the Executive Order.  Therefore, the Court must consider the threshold

jurisdictional question of whether Plaintiff has standing to pursue his claims for damages under §

1983 before the Court considers the merits of the dispute.  *See S. Grande View Dev. Co., Inc. v.*

*City of Alabaster, Ala.*, 1 F. 4th 1299, 1305 (11th Cir. 2021) (citing *Elend v. Basham*, 471 F.3d

1199, 1204 (11th Cir. 2006)).

      Plaintiff has standing to seek damages against Broward (and Palm Beach) but not Dade.

To have standing, a plaintiff must establish three prerequisites:

> (1) an injury in fact—an invasion of a legally protected interest that is both (a)
> concrete and particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) a causal connection between the plaintiff's injury and the
> challenged action of the defendant; and (3) a likelihood, not merely speculation,
> that a favorable judgment will redress the injury.

*Gardner*, 962 F.3d at 1338 (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir.

2019)) (cleaned up).

      The reason that Plaintiff does not have standing to pursue damages related to Dade's mask

mandate (and Stadium's related mask policy) is because Plaintiff did not suffer an injury-in-fact

as a result of the mandate.  By way of comparison, when Plaintiff filed this case, he had already

allegedly suffered an injury-in-fact (assuming the mask mandate is unconstitutional) because he

was unable to participate in the Clinic due to Palm Beach's mask mandate.  Similarly, prior to the

commencement of this case, Broward's mask mandate (and Nova's related mask policy) allegedly

prevented Plaintiff from being on Nova's campus, where he was enrolled as a student, without

complying with the mask policy.  However, Plaintiff's only alleged injury related to Dade's mask

mandate and Stadium's mask policy is that Plaintiff claims he would not be able to attend his

graduation without complying with the mask mandate.  But unlike the alleged injuries suffered as

a result of the other Broward and Palm Beach mandates, no injury would have ever materialized

from the Dade mask mandate because, by the time graduation occurred, Dade's mask mandate was no longer in effect. *See Tokyo Gwinnett, LLC*, 940 F.3d at 1263 ("But this alleged injury relates to future or prospective harm, not imminent or actual harm. Because the old ordinances were repealed and replaced, these alleged injuries stemming from those ordinances will never materialize and cannot support Article III standing." (internal citations omitted)). *See also Elend*, 471 F.3d at 1205 ("If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing.").

For the foregoing reasons, Plaintiff's requests for injunctive and declaratory relief are moot. Additionally, while Plaintiff has standing (at least at this stage) to seek damages under § 1983 against Broward and Palm Beach, he does not have standing to do so against Dade. As such, Count IV should be dismissed in its entirety (without prejudice).[12]

### 2. Alleged Constitutional Violations

#### a. Free Exercise Clause

As set forth in the First Amendment, "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof* [.]" *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1253 (11th Cir. 2012) (quoting U.S. Const. amend. I). "The Free Exercise Clause of the First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Id.* (citation omitted). The protections it provides "prevent the government from discriminating against the exercise of religious beliefs or conduct motivated by religious beliefs." *Id.* (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

---

[12] "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1221 (11th Cir. 2020) (citation omitted).

520, 532 (1993)).  Pleading a claim for relief based on the Free Exercise Clause requires a plaintiff to "allege that the government has impermissibly burdened one of [his] sincerely held religious beliefs." *Cambridge Christian Sch.*, 942 F.3d at 1246 (citing *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007)) (internal quotation marks omitted).  The pleading requirement has two components: "(1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Id.* (quoting *GeorgiaCarry.Org*, 687 F.3d at 1256-57).  Provided that a plaintiff satisfies these initial pleading requirements – thereby triggering the Free Exercise Clause – courts proceed to consider whether the law at issue is subject to rational basis review or strict scrutiny.  *See GeorgiaCarry.Org*, 687 F.3d at 1256.  It is questionable at best whether Plaintiff has included sufficient factual allegations to satisfy the initial pleading requirements.  Nevertheless, I will proceed to consider whether mask mandates are subject to rational-basis or strict scrutiny and whether they survive the level of review to which they are subject.

"If a law is one that is neutral and generally applicable, then rational basis scrutiny should be applied, requiring that the plaintiff show that there is not a legitimate government interest or that the law is not rationally related to protect that interest." *Id.* at 1255 n.21 (citing *Church of the Lukumi Babalu Aye*, 508 U.S. at 531).  "If, however, a law is not neutral or generally applicable, either because the law is facially discriminatory or, alternatively, because 'the object of [the] law is to infringe upon or restrict practices because of their religious motivation,' then strict scrutiny is the proper framework." *Id.*  When strict scrutiny applies, a defendant must "show there is a compelling governmental interest and that the law is narrowly tailored." *Id.* (citing *Church of the Lukumi Babalu Aye*, 508 U.S. at 531-32).

Here, rational basis review applies because the mask mandates are neutral and generally applicable. They are neutral because they do not have the object of "infring[ing] upon or restrict[ing] practices because of their religious motivation." *Keeton v. Anderson-Wiley*, 664 F.3d 865, 879 (11th Cir. 2011) (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 533). They are generally applicable because the government has not "in a selective manner impose[d] burdens only on conduct motivated by religious belief." *Id.* (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 543). Therefore, the mask mandates are only subject to rational basis review, even if they have "the incidental effect of burdening a particular religious practice." *Id.* (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 531). As such, the mask mandates are "presumed constitutional," and Plaintiff has the burden to demonstrate otherwise by showing that they are "not rationally related to a legitimate government interest." *Id.* (citation omitted). Notably, other courts reviewing mask mandates have similarly found that they are subject to rational basis review. *See Resurrection Sch. v. Hertel*, No. 20-2256, 2021 WL 3721475, at *16 (6th Cir. Aug. 23, 2021) (finding that mask mandate did not violate Free Exercise Clause because it was "neutral and of general applicability and satisf[ied] rational-basis review"); *W.S. by Sonderman v. Ragsdale*, No. 1:21-CV-01560-TWT, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) (finding, in equal protection clause context, that "[r]ational basis is the proper standard of review for [a] mask mandate" and that mask mandate "passe[d] rational-basis scrutiny"); *Delaney v. Baker*, 511 F. Supp. 3d 55, 74 (D. Mass. 2021) (finding mask mandate to be neutral and of general applicability and, consequently, determining that it "need only be rationally related to the interest in stemming the spread of COVID-19"); *Resurrection Sch. v. Gordon*, 507 F. Supp. 3d 897, 902 (W.D. Mich. 2020) ("The Court finds that the challenged face-mask requirement is neutral and generally applicable. Any burden on Plaintiffs' religious practices is incidental, and therefore, the orders are

23

not subject to strict scrutiny."). *See also Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 229 (2d Cir. 2020) (Park, J., dissenting) (disputing neutrality of COVID-19 executive order under review, but finding that, unlike that order, mask mandates "impose *neutral* public-health guidelines" (emphasis added)).

Plaintiff has not shown, and cannot plausibly allege, that the mask mandates are not rationally related to a legitimate government interest. Broward and Dade contend that the mask mandates are rationally related to their legitimate interest in stemming the spread of COVID-19. [DE 43] at 8. The Emergency Orders (and other related emergency orders) similarly explain the Counties' interests in addressing the COVID-19 pandemic. Plaintiff does not dispute that the counties have a legitimate interest in stemming the spread of COVID-19. [DE 58] at 7. Instead, he argues that implicit in the counties' assertion is "the erroneous assumption that masks somehow serve to promote that end, rather than contribute to the further loss of human lives and other harsh consequences produced by COVID-19." *Id.* Nonetheless, while Plaintiff "may disagree with the public health efficacy of mask orders . . . federal courts do not sit in a policy-checking capacity to second guess the wisdom of state legislative acts." *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202 (M.D. Fla. 2021) (granting motion to dismiss). *See also infra* note 19; *Denis v. Ige*, No. CV 21-00011 SOM-RT, 2021 WL 1911884, at *8-10 (D. Haw. May 12, 2021) (finding that mask mandates survive rational basis review and, therefore, dismissing free exercise clause challenge to mask mandates). And it is certainly rational for Defendants to believe, based on the guidance provided by the CDC and other experts, that mask mandates will help control the spread of COVID-19. Because Defendants' mask mandates/policies are rationally related to a legitimate governmental interest, Plaintiff's Free Exercise Clause challenge fails.

### b. Free Speech & Expression

The First Amendment also prohibits "abridging the freedom of speech."  U.S. Const. amend. I.  This protection encompasses not just spoken or written words but "offers safeguards for 'expressive conduct, as well.'"  *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1336 (11th Cir. 2021) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004)). However, while some forms of "symbolic speech" receive First Amendment protection, *see United States v. O'Brien*, 391 U.S. 367, 376 (1968), that protection only extends to conduct that is "inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* *("FAIR")*, 547 U.S. 47, 66 (2006).  Indeed, the Supreme Court has "rejected the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." *Id.* at 65-66 (internal citations omitted).  Therefore, "[i]n determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." *One World One Fam. Now v. City of Miami Beach*, 175 F.3d 1282, 1285 (11th Cir. 1999).  To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," the two-part *Johnson* test asks: (1) "whether '[a]n intent to convey a particularized message was present,'" and (2) whether "the likelihood was great that the message would be understood by those who viewed it." *Burns*, 999 F.3d at 1336 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).

Plaintiff appears to argue that requiring him to wear a mask compels him to engage in expressive conduct conveying a message of subservience to authority and that the refusal to wear a mask is inherently expressive of his disapproval of that message and the mask mandates themselves.  However, neither wearing or not wearing a mask is inherently expressive.  In the

context of COVID-19, wearing a mask does not evince an intent to send a message of subservience to authority – or any message at all. Rather, wearing a mask would typically be viewed as a means of limiting the spread of COVID-19 (regardless of Plaintiff's beliefs in the efficacy of masks for that purpose). *See Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 237 (D. Md. 2020). While Plaintiff may interpret mask wearing as subservience or akin to worship of idols, that message would not be "overwhelmingly apparent" to one observing him or anyone else wearing a mask. *See FAIR*, 547 U.S. at 66 (distinguishing law schools' treatment of military recruiters from the inherently expressive conduct of flag burning at issue in *Johnson*); *Antietam Battlefield*, 461 F. Supp. 3d at 237. Thus, wearing a mask is not "inherently expressive" such that the challenged mask mandates constitute compelled speech subject to First Amendment analysis.[13]

Similarly, the act of not wearing a mask is not inherently expressive under *Johnson*. Even positing Plaintiff's intent to convey a message of protest against authority by not wearing a mask,[14] he cannot satisfy the second prong of the *Johnson* test because there is no great likelihood that such a message would be understood by one observing his conduct. There are myriad reasons why someone may not be wearing mask – the person may qualify for a medical exemption, may be apathetic towards or unconcerned about COVID, may have simply forgotten their mask, or, indeed,

---

[13] Nor can one reasonably argue, as Plaintiff does, [DE 58] at 10, that his refusal to wear a mask "manifests the expressive quality of a parade, a newsletter, or the editorial page of a newspaper." The inherent purpose of publishing a newsletter or editorial page or of holding a parade is to convey a particular message. *See Hurley v. Irish–Am. Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 568 (1995) ("[W]e use the word 'parade' to indicate marchers who are making some sort of collective point, not just to each other but to bystanders along the way."). The same can hardly be said about wearing or not wearing a mask.

[14] Defendants Broward, Dade, and Henry appear to concentrate their arguments on the second prong of the *Johnson* test, arguing that "whatever [Plaintiff] purports to be expressing is not apparent." [DE 43] at 9. They do not explicitly question his intent to convey some message. While Plaintiff's intent to convey his message is not precisely alleged in the SAC, his subjective intent can be inferred from his allegations overall. In any event, Plaintiff's theory fails under the second prong of the *Johnson* test.

may be attempting to send a political or religious message as Plaintiff contends.  However, there

is no way for an observer to know the reason why without additional explanation.  *See Minnesota*

*Voters Alliance v. Walz*, 492 F. Supp. 3d 822, 837-838 (D. Minn. 2020).  As the Supreme Court

explained in *FAIR*, "[t]he fact that such explanatory speech is necessary is strong evidence that the

conduct at issue here is not so inherently expressive that it warrants protection under *O'Brien*."

547 U.S. at 66.  Moreover, simply framing defiance of a law or regulation as a means of

communicating disagreement with that law or regulation cannot alone trigger a First Amendment

analysis.  Again, as the Supreme Court articulated in *FAIR*,

> For instance, if an individual announces that he intends to express his disapproval
> of the Internal Revenue Service by refusing to pay his income taxes, we would have
> to apply *O'Brien* to determine whether the Tax Code violates the First Amendment.
> Neither *O'Brien* nor its progeny supports such a result.

*Id.*[15]  The same might be said of, say, refusing to wear a seatbelt or a motorcycle helmet, despite

laws requiring such safety measures, in protest of being told to do so.  In short, Plaintiff's argument

that the challenged mask mandates limit his ability to protest mask mandates by requiring him to

wear a mask does not make his desire to not wear a mask inherently expressive conduct within the

ambit of First Amendment protection.

Multiple federal courts since the start of the COVID-19 pandemic have rejected the

argument that wearing or not wearing a mask is "inherently expressive" conduct and concluded

that mask mandates are not subject to *O'Brien* or other First Amendment scrutiny.  *See*, *e.g.*,

*Antietam Battlefield*, 461 F. Supp. 3d at 237; *Minnesota Voters*, 492 F. Supp. 3d at 837-38; *Stewart*

---

[15] By the same logic, Plaintiff's argument that requiring him to wear a face mask is tantamount to forcing him to "adopt the government's message" – to the extent that message is that one should comply with the requirement to wear a face mask – is unavailing.  Requiring someone to wear a mask is no more "compelling speech" in favor of mask wearing than requiring people to pay taxes is "compelling speech" in favor of the Tax Code.

*v. Justice*, 502 F. Supp. 3d 1057, 1066 (S.D.W. Va. 2020); *Denis*, 2021 WL 1911884, *10-11. Significantly, Plaintiff cites no authority reaching the opposite conclusion.  For the reasons articulated above, I find that the challenged mask mandates do not implicate expressive conduct protected by the First Amendment, and, consequently, Plaintiff's Free Speech challenge fails.

Defendants Broward, Dade, and Henry contend that, even if wearing or not wearing a mask were considered inherently expressive conduct, the challenged mask mandates would satisfy intermediate scrutiny under the First Amendment.  [DE 43] at 9-11.  Plaintiff fails to respond to this argument, though certain allegations in his SAC suggest the view that the mask requirements amount to content or viewpoint discrimination, requiring strict scrutiny.  SAC ¶¶ 59-63.  The Court need not reach the question, because the conduct at issue is not inherently expressive.  However, even if the Court were to consider mask-wearing inherently expressive, the Defendants are correct that intermediate scrutiny would apply and that the mask mandates contained in the Emergency Orders satisfy such scrutiny.

The Emergency Orders' mask mandates are (at most) subject to intermediate scrutiny because the Counties' purpose in enacting the orders was unrelated to the suppression of expression.  "If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from *O'Brien* for evaluating restrictions on symbolic speech." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (citing *Johnson*, 491 U.S. at 403; *O'Brien,* 391 U.S. at 377).  Plaintiff does not appear to contend – nor could he plausibly contend – that the Counties' purpose in enacting the Emergency Orders was anything other than to protect public health by limiting the spread of COVID-19.  Notably, this purpose is made clear in the Emergency Orders.  Thus, the Emergency Orders' purposes are

unrelated to the suppression of speech and subject to *O'Brien*'s intermediate scrutiny (if they come within the ambit of the First Amendment at all).

Under  *O'Brien*,

a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.  There is no dispute here that the Counties had the power to issue the Emergency Orders at issue.  Nor does Plaintiff dispute that the Counties had an important and substantial interest in stemming the spread of COVID-19.  *See* SAC ¶ 68; [DE 58] at 7.  And, again, that interest is clearly unrelated to the suppression of speech.

Plaintiff does contest, with conclusory allegations and vague references to scientific studies unrelated to COVID-19, the efficacy of masks as a means of preventing the spread of COVID-19. But these allegations are insufficient to plausibly maintain that the challenged Emergency Orders fail to further the Counties' important interest, particularly when nearly every public health institution in the country has recommended mask-wearing as a means of slowing the virus's spread.  *See Oakes*, 515 F. Supp. 3d at 1216 (finding a similar mandate satisfied intermediate scrutiny and noting "at this point in the pandemic, just about every public health body promotes" mask-wearing and social distancing for their effectiveness); *Minnesota Voters*, 492 F. Supp. 3d at 838 (finding a similar mask mandate satisfied intermediate scrutiny and noting that "federal health officials recommend face coverings as an effective way to slow the spread of COVID-19, and this recommendation finds support in recent studies.").

Moreover, the challenged mask mandates impose only an incidental burden on speech and are narrowly tailored to further the Counties' substantial interest.  Importantly, "an incidental

burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *FAIR*, 547 U.S. at 67 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).   The interest in slowing the spread of a virus transmitted through respiratory droplets would certainly be achieved less effectively without the challenged mask mandates, and, to the extent that requiring wearing of a mask incidentally burdens the speech of those who disagree with the need for such a requirement, the mandates could not be more narrowly drawn without making them less effective.   Moreover, and importantly, the challenged mask mandates leave open many alternative channels of communication. *See DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1269 (11th Cir. 2007).   Indeed, Plaintiff is free to express his opinion about mask requirements in virtually every way other than not wearing a mask – including, say, wearing a mask with an explicit message of protest written on it.   In sum, even if the challenged mask mandates do burden expressive conduct, they nonetheless satisfy intermediate scrutiny, and Plaintiff's Free Speech challenge fails.

### c.  Assembly & Association

Plaintiff's SAC also purports to base the § 1983 claims on violations of his First Amendment rights to assembly and free association.   SAC ¶¶ 67, 68, 83.   Defendants Broward, Dade, and Henry briefly argue that the challenged mask mandates do not violate these rights for the same reasons they do not violate Plaintiff's freedom of expression – i.e., they are content-neutral regulations narrowly tailored to furthering the substantial government interest of protecting public health.   [DE 43] at 11.   Plaintiff does not respond at all to this argument.   To the extent the Court should even consider the argument further, Defendants are correct that Plaintiff cannot state a claim based on the rights to assembly and free association for the same reasons described above.

The only allegation in the SAC articulating how the challenged mask mandates violate Plaintiff's rights to peacefully assemble and freely associate[16] is that the mandates "substantially impact" these rights by "effectively prohibit[ing] individuals from gathering unmasked." SAC ¶ 68.  As another Court has said regarding a similar challenge to another Florida county's mask mandate, "[t]his claim is a head scratcher." *Oakes*, 515 F. Supp. 3d at 1215.  The mask mandates do nothing to prevent Plaintiff from assembling or associating with others; they simply require that he be masked while doing so.[17]  Thus the mask mandates seem to have, at most, a minimal impact – and certainly not the alleged "substantial impact" – on Plaintiff's rights to assemble and associate independent of the alleged burdens (rejected elsewhere) on his rights of free exercise and freedom of expression.

Even to the extent the mask mandates could be interpreted as placing any burden on Plaintiff's rights of assembly and association, at most they would amount to "time, place, and manner" restrictions subject to the same intermediate scrutiny described above. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  That is, again, because the mask mandates are content

---

[16] As the Supreme Court has observed, "while the First Amendment does not in terms protect a 'right of association,' our cases have recognized that it embraces such a right in certain circumstances." *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989).  The Supreme Court has recognized a constitutionally-protected "right of association" in two senses: (1) the right to make choices to enter into and maintain certain "intimate human relationships"; and (2) the right to associate for the purpose of engaging in activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion.  *Id*. at 24 (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984)).  Here, Plaintiff appears to be referring to his right to associate for purposes of engaging in other First Amendment-protected activities.  *See* SAC ¶ 63.  However, Plaintiff fails to allege how the challenged mask mandates prevent him from associating with others for the purpose of engaging in First Amendment-protected activities except to the extent that those mask mandates allegedly burden those First Amendment-protected activities themselves (which claims are analyzed, and rejected, elsewhere).

[17] To the extent the Emergency Orders placed other restrictions, such as on the specific types of establishments where people could or could not gather, the SAC does not address, or complain of, such restrictions.

31

neutral, applying generally to everyone, and aimed at the purpose of protecting public health, not curbing speech.  *See id.*; *Oakes*, 515 F. Supp. 3d at 1215.  Yet, for the same reasons articulated above, the mask mandates are narrowly tailored to further the significant government interest in protecting public health.  Thus, to the extent Plaintiff premises his § 1983 claims on the rights of assembly and association, he again fails to state a claim.

### d.  Substantive Due Process

Plaintiff has failed to plausibly allege any substantive due process violation.  "Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances."  *Maddox v. Stephens*, 727 F.3d 1109, 1127 (11th Cir. 2013) (quoting *Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002)).  "Ordinarily, the substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty."  *Worthy v. Phenix City, Ala.*, 930 F.3d 1206, 1221 (11th Cir. 2019) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)) (cleaned up).  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  *AHE Realty Assoc., LLC v. Miami-Dade Cnty., Fla.*, 320 F. Supp. 3d 1322, 1335 (S.D. Fla. 2018) (quoting *Albright*, 510 U.S. at 272).  "Absent a 'compelling state interest' and an infringement 'narrowly tailored' to serve that interest, the government may not violate" a fundamental right.  *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1297 (11th Cir. 2019).  However, "[s]ubstantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard."  *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (citing *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013)).

A plaintiff asserting a substantive due process violation faces a high bar. *Maddox*, 727 F.3d at 1119. "[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id.* (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted). "A deprivation is of constitutional stature if it is undertaken for improper motive and by means that were pretextual, arbitrary and capricious, and without rational basis." *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (citation omitted). Significantly, "the Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Maddox*, 727 F.3d at 1120 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)).

Here, Plaintiff primarily argues that the "mask mandates constitute a compulsory bodily intrusion." *E.g.*, [DE 58] at 13. *See also* SAC ¶ 71. Relatedly, he implies that requiring individuals to wear masks is essentially forcing medical treatment upon them. *See* SAC ¶ 72. Additionally, Plaintiff alleges that the mask mandates violate "the fundamental right to freedom of movement." *Id.* ¶ 74. However, Plaintiff's challenges clearly fail.

With respect to Plaintiff's bodily intrusion and medical treatment contentions,[18] such characterizations are implausible. A mask requirement does not plausibly qualify as a "compulsory bodily intrusion." Wearing a mask on the outer surface of one's face to cover one's

---

[18] *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269 (1990) (One "notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment.").

nose and mouth does not "intrude" within one's body; it certainly is significantly different in kind and degree from the circumstances at issue in the cases upon which Plaintiff generally relies. *See Washington v. Harper*, 494 U.S. 210 (1990); (concerning the forced administration of antipsychotic drugs to a prison inmate); *Cruzan*, 497 U.S. 261 (concerning the withdrawal of life-sustaining nutrition and hydration treatment from a patient in a vegetative state). Nor can one plausibly allege that the government is requiring medical treatment by requiring individuals to wear a face mask.

As to Plaintiff's freedom of movement contention, Plaintiff likewise fails to plausibly allege that the mask mandates impact one's freedom of movement. The mandates only require individuals to wear a mask in certain circumstances. They do not impact their freedom of movement in any manner. However, Plaintiff generally complains that the mask mandates arbitrarily require individuals to wear masks where social distancing of at least six feet is not possible. *See* [DE 58] at 14-15. There are at least a few issues with his argument. First, it is only the Broward Order that contains six-feet language. Second, the six-feet component is not arbitrary. It is common knowledge at this point that the CDC and other experts have recommended social distancing of at least six feet.[19] In fact, Chapter 4 of the Broward CEO even explains that "Social Distancing means staying at least 6 feet away . . . in accordance with CDC Guidelines." In other words, the Broward CEO shows that Broward did not arbitrarily pull "six feet" out of thin air.

---

[19] As discussed in the next paragraph, rational basis review applies to Plaintiff's substantive due process challenge. Under rational basis review, CDC guidelines are more than sufficient to justify the six-feet component of Broward's Order and Broward's CEO. *See Kentner*, 750 F.3d at 1281 ("Under rational basis scrutiny, governments are not required to convince the courts of the correctness of their legislative judgments. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." (internal citation and quotation marks omitted)).

Third, even if the six-feet component was arbitrary, Plaintiff fails to show how it is "arbitrary in the constitutional sense."

Because Plaintiff did not, and cannot, plausibly allege a violation of any fundamental right, his substantive due process challenge is only subject to rational basis review.  As discussed above, the mask mandates survive rational basis review (quite easily) because they are rationally related to a legitimate government interest.  Moreover, the mask mandates cannot plausibly be characterized as egregious or "arbitrary or conscience shocking in a constitutional sense."  *Cf. McCants v. City of Mobile*, 752 F. App'x 744, 749 (11th Cir. 2018) ("Greene's bare and conclusory allegations fail to meet her burden of pleading an egregious intentional wrong. Hence, the court properly dismissed her substantive due process claim against Officer Chandler."); *Case v. Ivey*, No. 2:20-CV-777-WKW, 2021 WL 2210589, at *22 (M.D. Ala. June 1, 2021) (finding that substantive due process challenge to mask mandate should be dismissed for two reasons, including that the allegations of the complaint failed to "plausibly demonstrate that Defendants' conduct in enacting the mask requirement rose to the 'conscience-shocking level'").  Therefore, Plaintiff fails to state a claim for any substantive due process violation.  *Cf. Stewart*, 502 F. Supp. 3d at 1068 (rejecting substantive due process/freedom of movement challenge to mask mandate).

### 3. Qualified Immunity (as to Henry)

Although Plaintiff's § 1983 claims should be dismissed – for the reasons discussed above – without any need to reach Henry's qualified immunity argument, should the Court reach the issue of qualified immunity, it should find that qualified immunity protects Henry from any damages claim.[20]  "Qualified immunity attaches when an official's conduct does not violate clearly

---

[20] Qualified immunity only applies to claims for monetary damages, not claims for injunctive or declaratory relief. *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).

established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citing *Maddox*, 727 F.3d at 1120). A public official acts within the scope of his discretionary authority when his actions "(1) [are] undertaken pursuant to the performance of his duties, and (2) [are] within the scope of his authority." *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

It is undisputed that Henry was acting within the scope of her discretionary authority. Therefore, the burden shifts to Plaintiff to show that qualified immunity is inappropriate. *Id.* To satisfy his burden, Plaintiff must show both that Henry violated a constitutional right and that the right was "clearly established" at the time the violation occurred. *Id.* As discussed in the preceding sections, neither Henry nor the other Defendants violated any of Plaintiff's constitutional rights. Therefore, qualified immunity attaches.

Nonetheless, even if the Court were to find that Henry violated any of Plaintiff's constitutional rights, the rights at issue were certainly not clearly established. In determining whether the law was clearly established at the time of the violation, courts look to see whether there was "fair warning" at the time that the subject conduct occurred. *Id.* (citing *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)). Fair warning or fair notice generally exists in the form of binding case law making it clear to reasonable officials in the defendant's place that his conduct violates federal law. *Id.* (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000)). However, there are three separate ways in which a plaintiff may satisfy his burden. First, he may point to "materially similar" binding precedent. *Id.* at 852 (citing *Loftus v.*

36

*Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)).   Under this approach, courts consider "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case."  *Id.* (citing *Loftus*, 690 F.3d at 1204).  "Second, a plaintiff may invoke a 'broader, clearly established principle' that he asserts 'should control the novel facts [of the] situation.'"  *Id.* (citing *Loftus*, 690 F.3d at 1204-05).  Third, "a right is 'clearly established' when the defendant's conduct 'lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'"  *Id.* (quoting *Loftus*, 690 F.3d at 1205).  "Similarly, [courts] recognize the obvious-clarity exception where conduct is 'so bad that case law is not needed to establish that the conduct cannot be lawful.'"  *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)).  Nevertheless, this final category is narrow.  *Id.*

        It is unclear which, if any, of these avenues Plaintiff relies on to satisfy the "clearly established" requirement.  If anything, he is probably pointing to the "materially similar" binding precedent avenue, as he contends in his response that the SAC "includes approximately nine pages of case law explaining how Defendants' actions violate the aforementioned constitutional rights, all of which was [sic] clearly established at the time" Henry enacted and enforced the Broward Order.  [DE 58] at 16.  However, Plaintiff's argument is conclusory, and his response fails to discuss any of this case law to satisfy his burden of showing that the constitutional rights at issue were clearly established.  Of course, "liberal construction of pro se pleadings [to the extent Plaintiff is even entitled to such liberal construction as a law school graduate] 'does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'"  *Smitherman v. Decatur Plastics Prod. Inc*, 735 F. App'x 692, 692 (11th Cir. 2018) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014)).

Regardless, it is inconceivable that Henry could have violated any clearly established constitutional rights, based on materially similar binding precedent, by enacting or enforcing an emergency order aimed at a pandemic that this country and this world have never seen before.  In other words, it is highly unlikely that any materially similar binding precedent could have even existed at the time that Broward implemented the Broward Order.  At the very least, Plaintiff evidently fails to point to any binding precedent that would qualify as such.  Notably, the fact that numerous courts – bound to follow the Supreme Court decisions cited in the SAC – have rejected challenges identical to Plaintiff's challenges (as catalogued in the preceding sections), whereas Plaintiff has failed to cite even a single decision in his favor, further highlights that no materially similar binding precedent clearly establishes the rights Plaintiff claims exist.  Therefore, even if the Court were to find that the mask mandate violated any constitutional rights, such rights were certainly not clearly established.  As such, Henry is entitled to qualified immunity.

### D.  COUNT VI - RLUIPA

In Count VI, Plaintiff appears to assert that the Emergency Orders containing the mask mandates violate three RLUIPA provisions, 42 U.S.C. § 2000cc(a)(1), (b)(1), and (b)(2). However, Plaintiff has failed to state a claim because he has failed to include factual allegations to plausibly show that the "land use regulation" requirement – which is in each of the three provisions – is satisfied.

Section 2000cc(a)(1), which is referred to as RLUIPA's substantial-burden provision, provides that:

> No government shall impose or implement a *land use regulation* in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

38

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 980 F.3d 821, 828 (11th Cir. 2020) (quoting 42 U.S.C. § 2000cc(a)(1)) (emphasis added). Section 2000cc(b)(1), which is referred to as RLUIPA's equal-terms provision, prohibits governments from imposing or implementing "a *land use regulation* in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *Id.* at 833 (quoting 42 U.S.C. § 2000cc(b)(1)) (emphasis added). Finally, section 2000cc(b)(2), which is referred to as RLUIPA's nondiscrimination provision, prohibits governments from imposing or implementing "a *land use regulation* that discriminates against any assembly or institution on the basis of religion or religious denomination." *Id.* at 834 (quoting 42 U.S.C. § 2000cc(b)(2)) (emphasis added).

Thus, all three RLUIPA provisions only apply to "land use regulations." Under RLUIPA, a "land use regulation" is defined as

> a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc-5(5). Therefore, to state a claim under any or all of the three provisions at issue, the complained of Emergency Orders must involve zoning or landmarking laws. *See Harris v. Mukasey*, 265 F. App'x 461, 462 (9th Cir. 2008) (finding that complaint failed to state claim because RLUIPA only allows a plaintiff to challenge laws involving zoning and landmarking laws (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1036 (9th Cir. 2004))). Additionally, Plaintiff must have "an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest" in order to state a claim. *Chabad Lubavitch of Litchfield Cnty., Inc. v. Borough of Litchfield*, No. 3:09-CV-1419 (JCH), 2016 WL 370696, at *26 (D. Conn. Jan. 27, 2016). *See also Vision Church v. Vill. of Long*

*Grove*, 468 F.3d 975, 998 (7th Cir. 2006) ("Under this definition, a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." (quoting *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 434 (6th Cir. 2002))).

Here, Plaintiff fails to state a RLUIPA claim for at least two reasons. First, the Emergency Orders are not zoning or landmarking laws, nor do they involve the application of zoning or landmarking laws. *Cf. Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 771 (E.D. Cal. 2020) (finding that RLUIPA did not apply to state and county stay-at-home orders because the orders regulated conduct, not land use); *Abundant Life Baptist Church of Lee's Summit, Mo. v. Jackson Cnty., Mo.*, No. 4:20-00367-CV-RK, 2021 WL 1970666, at *15 (W.D. Mo. May 17, 2021) (finding that the plaintiff failed to state a RLUIPA claim because RLUIPA did not apply to the emergency public health orders at issue). Second, Plaintiff has failed to allege that the emergency orders limit or restrict his use or development of land in which he has an interest (specifically, "an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest"). Therefore, Plaintiff has failed to state a claim under RLUIPA.

## MOTION FOR SANCTIONS

## I.   LEGAL STANDARD

Rule 11 is intended "to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (citation omitted). When an attorney signs and files a pleading (and other court papers), the attorney is certifying, *inter alia*, that: "(1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to

40

change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery." *Id.* (citing Fed. R. Civ. P. 11(b)).  Consequently, sanctions may be imposed under Rule 11 "when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success; or (3) is filed in bad faith for an improper purpose." *Vient v. Highlands News-Sun*, 829 F. App'x 407, 409 (11th Cir. 2020) (quoting *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1341 (11th Cir. 2018)).  In evaluating a motion for sanctions under Rule 11, an objective standard is applied.  *Id.* (citing *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)).  The objective standard requires consideration of "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous."  *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)).  *See also Benedek v. Adams*, 725 F. App'x 755, 761 (11th Cir. 2018) ("The standard used to evaluate an alleged violation of Rule 11 is 'reasonableness under the circumstances.'" (citing *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994))).

Filing a Rule 11 motion, however, may pose some risk to the filer.  *Plantation Open MRI, LLC v. Infinity Auto Ins. Co.*, 818 F. App'x 891, 893 (11th Cir. 2020).  "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.* (quoting Fed. R. Civ. P. 11(c)(2)).  Stated differently, a Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions." *Id.* (quoting *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1260 (11th Cir. 2014)).  Therefore, if "a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion." *Id.* (quoting *Smith*, 750 F.3d at 1260).  No cross-motion for sanctions is required for a court to render such an award. *Smith*, 750 F.3d at 1260.

## II.    **ANALYSIS**

The Motion for Sanctions is frivolous and should be denied.  In his 2-page Motion for Sanctions, Plaintiff seeks sanctions against two defense attorneys "for their submission of [allegedly] false or misleading statements to" the Court, which they "knew or should have known lacked factual merit."  [DE 42] at 2.  The Motion for Sanctions does not identify the alleged statements.  Instead, it refers to an attached memorandum.  However, no such memorandum was filed with the Court at the time the Motion for Sanctions was filed.  As a result, the response [DE 45] posits that the Motion for Sanctions should be denied in light of Plaintiff's failure to submit a memorandum of law as required by Local Rule 7.1(a)(1).  Notably, defense counsel attaches emails to the response showing that counsel informed Plaintiff of his failure to file a memorandum of law. Although Plaintiff provided a copy of the memorandum to defense counsel, he nevertheless did not file a copy of the memorandum with the Court (as required) prior to the deadline to respond to the Motion for Sanctions.  Therefore, defense counsel did not respond to the substantive arguments in their response (instead primarily limiting the response to the Local Rule 7.1(a)(1) argument).

It was only when Plaintiff filed his reply [DE 46] that he finally filed his memorandum with the Court [DE 47].  In his reply, Plaintiff claims to have submitted his memorandum to the Clerk's office along with the Motion for Sanctions and has the audacity to blame the Clerk's office for "ma[king] an error in the processing of [his] filing."  [DE 46] at 3.  While the Clerk's office employs human beings, and while human beings make mistakes from time-to-time, the type of error alleged by Plaintiff is simply not conceivable.  It is one thing for a human being to accidentally not scan a page, but it is quite another to miss 12 of 14 pages as Plaintiff would like the Court to believe.  Moreover, the fact that Plaintiff did not file his memorandum until June 23, 2021, even though defense counsel brought the issue to Plaintiff's attention on June 9, 2021 and

again on June 11, 2021, *see* [DE 45-1], further belies the accusations Plaintiff directs at the Clerk's office.  It was evidently Plaintiff who made the error, and more significantly, Plaintiff who chose not to correct it for two weeks after it was brought to his attention.

Because Plaintiff did not file his memorandum until he filed his reply, and because they both improperly raise arguments for the first time,[21] defense counsel filed the Motion to Strike [DE 53], requesting that the Court strike Plaintiff's reply and memorandum.  Alternatively, they request an opportunity to respond to the substantive arguments raised in the reply and memorandum.  Nevertheless, as the substantive arguments Plaintiff raises clearly fail (as discussed herein), the Motion to Strike should be denied as moot.

Although defense counsel raises procedural issues – as to Plaintiff's noncompliance with the Local Rules[22] – that justify denial of the Motion for Sanctions, the Motion for Sanctions should nevertheless be denied on the merits.  In his memorandum and reply, Plaintiff complains of the following 4 statements made by defense counsel in prior filings: (1) statement indicating that in *Strober*, the court found that the "plaintiff failed to state a claim under Title II because she did not exhaust her state administrative remedies," [DE 18] at 14; [DE 19] at 17; (2) "Plaintiff does not even allege that the mask requirements of the Commencement Defendants are motivated by

---

[21] *See Friedman v. Schiano*, 777 F. App'x 324, 332 n.13 (11th Cir. 2019) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief." (quoting *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987))); *United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) ("Arguments raised for the first time in a reply brief are not properly before the reviewing court." (citation omitted)).

[22] *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough [courts] are to give liberal construction to the pleadings of pro se litigants, '[courts] nevertheless have required them to conform to procedural rules.'" (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002))).  It is also worth noting, again, that Plaintiff, while not yet a member of the bar, is a law school graduate.

discriminatory intent," [DE 18] at 16; (3) "Plaintiff does not allege that he was denied access to any public accommodations within NSU's campus," [DE 18] at 13; and (4) "Plaintiff fails to identify an injury beyond his potential disappointment and embarrassment that will result from his lack of in-person participation at NSU's May 16, 2021 commencement ceremony," [DE 18] at 18.

As to the first statement – regarding *Strober* – defense counsel's statement is completely accurate, and Plaintiff's contention to the contrary is completely frivolous.   In *Strober*, the Eleventh Circuit stated in no uncertain terms that "Strober failed to state a claim under Title II because," *inter alia*, "she did not exhaust her state administrative remedies."  *Strober*, 701 F. App'x at 912-13.   The court further explained that "[t]o bring a viable claim under Title II, a plaintiff must first exhaust state or local administrative remedies, if such remedies are available."  *Id.* at 913 n.3 (citing 42 U.S.C. § 2000a-3(c)).  While Plaintiff is correct that the foregoing statements are dicta – the court found the plaintiff's Title II argument to be abandoned but addressed the merits anyway, *see id.* at 912 – the court still made the findings.  Moreover, defense counsel never argued that *Strober* (an unpublished, non-binding decision) or the findings in *Strober* were binding. Regardless, "[d]icta can, of course, have persuasive value."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) (citation omitted).

Moreover, on June 21, 2021, two days before Plaintiff filed his reply and memorandum, Judge Bloom entered an order in another case Plaintiff filed in this district, wherein Judge Bloom rejected essentially the same argument Plaintiff raises here.  *See L.A. Fitness*, 2021 WL 2530271, at *8.  In doing so, Judge Bloom specifically noted that the Court in this case had already "cit[ed] *Strober* for the *same proposition* cited to by Defendant's counsel."  *Id.* (citing *Nova Se. Univ.*, 2021 WL 1945831, at *3).  Even without Judge Bloom's order, Plaintiff's argument regarding defense counsel's *Strober* contention is completely meritless, and his use of the argument in a Rule

11 motion, which is supposed to be reserved to combat the most baseless, frivolous arguments, adds insult to injury. Furthermore, Plaintiff's decision to advance the argument, after both Judge Bloom and the Court in this case had given him indication that his claim was meritless, is worse still. It suggests bad faith and raises serious concerns regarding whether Plaintiff possesses the requisite character and fitness to become a member of the Florida Bar. At the very least, it demonstrates that Plaintiff still has much to learn about how professionals practice law and treat each other. To the extent Plaintiff did not receive Judge Bloom's order until after he filed his reply and memorandum, he should have immediately withdrawn his Motion for Sanctions upon receiving Judge Bloom's order. His decision not to do so is highly questionable, if not inexplicable.

With respect to the second, third, and fourth statements to which Plaintiff takes exception, none of the statements are frivolous. They are not clear misrepresentations of material facts as Plaintiff contends. They are facially – or, at a minimum, arguably – accurate statements regarding Plaintiff's Amended Complaint [DE 5], which was the operative pleading at the time the statements were made. Even if it is reasonable for Plaintiff to argue that the contrary can be inferred from the allegations of the Amended Complaint or his Brief [DE 7] in support of his motion for injunctive relief, defense counsel's contentions are likewise reasonable. Moreover, they concern largely trivial statements that should have been addressed in briefing (if at all) and not through a Rule 11 motion. *See Smith*, 750 F.3d at 1261 ("Rule 11 motions should not be made or threatened for minor, inconsequential violations." (quoting Fed. R. Civ. P. 11 advisory committee's note)). Plaintiff's decision to address these issues through a Rule 11 motion evidences a gross misuse of, and misunderstanding regarding, Rule 11. Just as Judge Bloom concluded regarding the motion for sanctions Plaintiff filed in his other case, Plaintiff's Motion for Sanctions

in this case appears to represent nothing more than an improper strong-arm tactic. *L.A. Fitness*, 2021 WL 2530271, at *8. It should undoubtedly be denied.[23]

That leaves one remaining issue. Defense counsel has requested an award of reasonable expenses, including attorney's fees, for having to respond to Plaintiff's frivolous Motion for Sanctions. Like Judge Bloom decided in Plaintiff's other case, it is a close call. *Id.* at *9. The Court surely has discretion to render an award against Plaintiff in accordance with Rule 11(c)(2) in light of the circumstances described above. However, I recommend that no such award be rendered here. Like Judge Bloom, I expect that Plaintiff, who sat (or at least planned to sit) for the July 2021 Florida Bar Exam, will learn from this experience and that he will not repeat the mistakes he has made here. Were plaintiff already a member of the Bar, I would not hesitate to recommend an award of sanctions against him. However, given Plaintiff's status as a recent law school graduate who has not yet been admitted to the Florida Bar, and given that defense counsel did not incur time responding to the *substance* of, or attending a hearing on, the Motion for Sanctions, I recommend that no sanctions be awarded against Plaintiff at this time. That said, Plaintiff needs to dedicate serious thought to the type of attorney he wishes to be. If he does not change the way he treats opposing counsel, and the analytical rigor with which he considers his filings, he will not make it very far.

---

[23] In addition to requesting sanctions under Rule 11, Plaintiff also requests that sanctions be awarded under section 57.105 of the Florida Statutes and/or under the Court's inherent powers. As to section 57.105, as Judge Bloom explained in Plaintiff's other case, "because this action arises under federal law and does not invoke the Court's diversity jurisdiction, Section 57.105 does not apply." *Id.* at *2 n.4 (citation omitted). With respect to the Court's inherent powers, Plaintiff is not entitled to sanctions because he has not demonstrated anything even close to bad faith on the part of defense counsel (for the reasons discussed above). *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("In the context of inherent powers, the party moving for sanctions must show *subjective* bad faith." (citations omitted)).

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Motion for Sanctions [DE 42], **GRANT** the First Motion to Dismiss [DE 43], **GRANT** the Second Motion to Dismiss [DE 44], **DENY as moot** the Motion to Strike [DE 53], **DISMISS** Plaintiff's requests for injunctive and declaratory relief without prejudice (based upon mootness), **DISMISS** Count IV without prejudice (on mootness and standing grounds), and **DISMISS** all other claims for damages on the merits.[24]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 30th day of August 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

---

[24] As noted above, the claims against Palm Beach and Haughwout (who have not appeared or filed a motion to dismiss) should be dismissed for the same reasons that the claims against Broward and Henry should be dismissed.  Nevertheless, should the Court disagree, I note that Plaintiff has failed to serve Palm Beach and Haughwout even though the SAC was filed more than 90 days ago. Therefore, if the Court does not dismiss the claims against Palm Beach and Haughwout for the reasons discussed in this Report, it should consider dismissal without prejudice (as to Palm Beach and Haughwout), after notice to Plaintiff, in accordance with Fed. R. Civ. P. 4(m).